UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                          Hon. Terrence G. Berg

     Plaintiff,                                   Case No. 19-20772

vs.

MATHEW MERCER-KINSER

     Defendant.

| ERIN S. SHAW | KIMBERLY W. STOUT |
|---|---|
| Assistant United States Attorney | Counsel for Defendant |
| 211 West Fort Street, 20th Fl | 370 E. Maple Rd., 3rd Floor |
| Detroit, MI  48226 | Birmingham, MI  48009 |
| (313) 226-9182 | (248) 258-3181 |

## MOTION TO DISMISS COUNTS ONE AND TWO

Defendant MATHEW MERCER-KINSER, by and through his attorney, Kimberly W. Stout, hereby files the attached Motion to Dismiss moving this Honorable Court to dismiss the Indictment as the statutes charged.

Respectfully submitted,

/s/ Kimberly W. Stout
KIMBERLY W. STOUT

Dated: Jan 5, 2023

## PROOF OF SERVICE

I hereby certify that on Jan. 5, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/ Kimberly W. Stout
KIMBERLY W. STOUT (P38588)
*Attorney for Defendant*
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
248-258-3181

Motion to Dismiss Indictment

Matthew Mercer-Kinser respectfully moves this Court, under F.R.Crim.P. _____ and the First Amendment to the United States Constitution, to dismiss the Indictment against him consisting of Counts 1 & 2. In support, Mercer-Kinser states the following:

1. Mr. Mercer-Kinser is charged in a 2-Count Indictment with Receipt of Child Pornography, 18 U.S.C. §2252A(a)(2), and Possession of Child Pornography, 18 U.S.C. §2252(a)(5)(B).

2. Mr. Mercer-Kinser's charges stem from an investigation which arose in response to an allegation against him for Enticement of a Minor, 18 U.S.C. _____, which never resulted in a charge of Enticement.

3. The Indictment is faulty for failure to state a claim on which relief may be granted, because the statute in which the counts reside, 18 U.S.C. 2252, is unconstitutionally overbroad on its face, and as applied to Mr. Mercer-Kinser, in violation of the Constitution's First Amendment.

4. The impermissible overbreadth results logically from the wording of the statute itself, and the myriad interpretations of its wording in caselaw

from the various courts.

5. As a consequence of the wording, definitions, and judicial interpretations, §2252A impermissibly sweeps-in a substantial amount of protected speech, in law and in fact. People can be, and have been, convicted under the statute for constitutionally-protected speech. This amounts to a facial overbreadth.

6. In practice, the statute unconstitutionally chills the hunt for legal child erotica, which is a constitutionally-protected form of expression. This represents overbreadth of the statute on its face, and as applied to Mr. Mercer-Kinser, whose behavior was limited to the hunt for legal child erotica, rather than child pornography.

7. Both the affirmative defense in the statute, and the presence of the word "knowingly," effectively fail to protect from prosecution or conviction for protected speech under §2252A.

8. The government's legitimate interest in protecting children from sexual abuse is outweighed by the burden that the statute places on free speech, and is wholly inapplicable to many of the forms of speech which it punishes or chills.

9. The statute prosecutes for a person's private thought by hingeing the legality of depictions on the thoughts of the viewer or producer, rather than exclusively on the material in question.

10. Mr. Mercer-Kinser respectfully requests this Honorable Court to rule §2252A invalid for overbreadth, as it impermissibly prohibits and chills a substantial amount of constitutionally-protected speen, even relative to its plainly legitimate sweep.

WHEREFORE, Mr. Mercer-Kinser requests that this Court enter an order invalidating 18 U.S.C. §2252A and dismissing the Indictment.

Respecfully submitted,

1

Brief in Support of Defendant's
Motion to Dismiss Indictment

1. The statute worded, defined, and interpreted
as it is, impermissibly sweeps-in a substantial
amount of protected speech.

When one looks to caselaw for a picture of how
the law is applied in fact, the mosaic which emerges
between the various courts is of an umbrella that
can, and does cover any depiction of a minor if
the genitals or pubic region are within the frame,
whether they are exposed or fully covered and not
visible, and whether or not the depiction is a
product of the sexual abuse of a minor, if the
jury determines that the depiction could be arousing
to a pedophile. The image need not be inherently
sexual, reason some of the courts, because the lustful
view of a sexual deviant, or the erotic thoughts of
the person creating the depiction, are enough to
confer a sexually explicit nature upon it. The statute
and judicial decisions even allow for images to be
considered child pornography which don't involve a
child in their creation, at all, if a child's face
is superimposed over a sexually explicit image of
adults.

The circuits have attempted almost
unanimously to clarify uncertain wording in the
statutory definitions applicable, 18 U.S.C. §2256,
by allowing factors to be considered which are
extra-statutory, and by doing so have extended the
sweep of §2252A far beyond the legislative intent
to protect children from sexual abuse and, in some
ways, even stand contrary to the text of the
statute.

More, the judicial constructions which amend
the statute by interpretation and can be applied

to regulate the speech of American citizens enable the imprisonment of a person for an image which, if the same image were possessed by a different person, or in a different context, would not be illegal at all. This notion that the nature of a thing depends not on what it is, but upon which members of the general public possess it, in what form, and where, offends the concept of common sense (i.e. reason) which our entire judicial system of justice is founded upon by declaring that "A does not equal A" if we are offended by the proclivities of whomever is declaring that it does.

The materials of which the aforementioned umbrella is constructed, in addition to the plain text of the statute, are the holdings of the courts of this nation in their decisions on cases regarding child pornography. The first such declaration is that pornography can exist without any depiction of sexual intercourse, sexual touching, masturbation, sadomasochism, nudity, or even partially exposed pubis or genitalia of any kind. See: Knox, 32 F.3d 733, 751 (3rd Cir. 1994)("We hold that the statutory term 'lascivious exhibition of the genitals or pubic area'... does not contain any requirement that the child subject's genitals be fully or partially exposed or discernible through his or her opaque clothing"), and U.S. v C.R., 792 F. Supp 2d 343, 371 (2nd Cir. 2011)("lascivious exhibition of the genitals or pubic area' has been interpreted broadly to include pictures focused on a child's pubic region, even where the subject is alone and clothed)". See also: Grimes, 244 F.3d 325 (5th Cir. 2001); Helton, 302 Fed Appx 842 (10th Cir. 2008); Andersen, 2010 CCA LEXIS 328 (A.C.C.A.).

Another judicial declaration which enlarges the definition of child pornography is that an "exhibition" can effectively be any image wherein the thing "exhibited" exists within the frame of the image. It can be in the center of the image, or in the forefront, or anywhere else it seems. See: Miller, 829 F.3d 519 (7th Cir. 2016)("There is no requirement... that the creator zoom in on the pubic area. Nor is there any requirement that the pubic area be the sole focus of the depiction. Determining the focus of a depiction... is properly left to the fact finder"); and Hill, 322 F.Supp 2d 1081, 1085 (C.D. Cal 2004)("In reality, exposed genitals tend to create their own focal point. Whether the genitals are the focus of the picture seems to involve as subjective an inquiry as lasciviousness itself"). See also: Prine, 2018 U.S. Dist LEXIS 93982 (W.D. KY 2018); Parrish, 2017 U.S. Dist LEXIS 114924 (S.D. Ohio).

The implication is that the genitals or pubic region need not be displayed prominently or especially, but need only be present in the image. This notion taken in juxtaposition with the lack of necessity for them to be fully, or even partially exposed, visible, or discernible is enough to begin to illuminate just to what incredible scope this statute reaches.

The statute is further enbroadened by the paradoxical declaration that a depiction which does not have an inherently sexual character, and in which noone is behaving sexually, can still somehow depict a minor engaging in sexually explicit conduct.
See: Johnson, 639 F.3d 433 (8th Cir. 2011)("Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual."); Wiegand,

4

812 F.2d 1239 (9th Cir. 1987) ("lasciviousness is not a characteristic of the child photographed, but of the exhibition which the photographer sets up for an audience that consists of himself and likeminded pedophiles"); Hall, 780 Fed Appx 710 (11th Cir. 2019) ("[S]exual suggestiveness, while probative if it exists, is also not a necessary prerequisite to a finding of lasciviousness."); and Arvin, 900 F.2d 1385 (9th Cir. 1990) ("[T]he sexuality of the depictions is often imposed on them by the attitude of the viewer or photographer."). See also: Horn, 187 F.3d 781 (8th Cir. 1999); Miller, 829 F.3d 519 (7th Cir. 2016); Holmes, 814 F.3d 1246 (11th Cir. 2016); Spoor, 904 F.3d 141 (2nd Cir. 2018); Hillie, 14 F.4th 677 (D.C. Cir. 2021).

This proposition invites the conclusion that the nation's court have lost sight of the forest for the tree: in their zeal to define "lascivious" they divorced it from the "sexually explicit conduct" which it meant to define (to say nothing of the fact that it is to be a depiction of _conduct_ that _the minor_ is engaged in, rather than merely a lascivious depiction), and in doing so have morphed the concept of "pornography" into, effectively, "anything which the defendant may, or meant to, become aroused by."

As if to emphasize the standardlessness which may now be used across the country in identifying what is child pornography, some courts have released juries from bondage to the Dost test, the very standard which nearly all courts applied to determine if an image qualifies as child pornography, and the very reason why the focal point of the image and the status of the subject as clothed or otherwise were applied to the question.

Adherence to the Dost test has never been

uniform across the Circuits, and the various courts
have never been able to come to a consensus about
how many, if any, of the factors need to apply
to an image for it to be lascivious, and therefore
child pornography, and to what extent any particular
factor is required.

See: Fabrizio, 459 F.3d 80 (1st Cir. 2006) ("[T]he Dost
factors have fostered myriad disputes that have led
courts far afield from the statutory language...As
one commentator observed, 'the Dost test has produced
a profoundly incoherent body of case law,'"), quoting
A. Adler, Inverting the First Amendment, 149 U. Pa. L.
Rev. 921, 953 (2002); Hill, 322 F. Supp. 2d 1081, 1085
(C.D. Cal. 2004) ("While the Dost factors attempt to
bring order and predictability to the lasciviousness
inquiry, they are highly malleable and subjective in
their application"). See also: Brown, 579 F.3d 672
(6th Cir. 2009). for discussion about the Dost test.

Nevertheless, Dost was, to the extent that
it was, something resembling a standard. Without
even that as a limiter to the sweep of the
statute, the question of whether something is child
pornography becomes entirely arbitrary.

This Sixth Circuit has found that, "[a] law
cannot stand if it 'impermissibly delegates basic
policy matters to policemen, judges, and juries for
resolution on an ad hoc and subjective basis, with
the attendant dangers of arbitrary and discriminatory
application.' Such laws 'may permit a standardless
sweep that allows policemen, prosecutors, and juries
to pursue their personal predilections.'" Memphis
Ctr. for Reprod. Health v Slatery, 14 F.4th 409
(6th Cir. 2021) quoting Grayned, 408 U.S. , 108-
109, 92 S.Ct. 2294, 33 L.Ed. 2d 222 (1972) and
Kolender v Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855,
75 L.Ed. 2d 903 (1983).

Despite this, juries are given free license

to find an image to be child pornography according to their own personal predilections, on an ad hoc basis, rather than on an objective standard. They may use the Dost factors, or they may base their conclusion on "common sense" and "common human experience," (See: Whorley, 400 F.Supp. 2d 880 (E.D. VA 2005)), or any other undefined basis which they choose, as the determination is entirely theirs to make.

See: Stewart, 729 F.3d 517, 527 (6th Cir. 2013)("The Dost test asks the factfinder to evaluate the [relevant] factors..."); Evers, 2017 U.S. App. LEXIS 27875 at LEXIS 4 (6th Cir. 2017)("[W]hether an image contains a lascivious exhibition is a question of fact for the jury"); Courtade, 2017 U.S. Dist LEXIS 206570 (E.D. VA) Aff'd at 929 F.3d 186 (4th Cir. 2019)("The Dost factors are neither exhaustive nor controlling on the question of whether a depiction is lascivious - Further, no one factor is outcome determinative, nor do all factors need to be present for a finding of lasciviousness"); Sweeney, 711 Fed Appx 263, 268 (6th Cir. 2017)("This list is not exhaustive, and an image need not satisfy every factor to be lascivious") quoting Brown, 579 F.3d 672, 680 (6th Cir. 2009); Brunette, 256 F.3d 14 (1st Cir. 2001)("[T]he identification of images that are lascivious will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer"); Jasorka, 153 F.3d 58 (2nd Cir. 1998)("[T]he conduct in question, limited by the adjective 'lascivious,' calls into play imprecise value judgments ..."); Wagner, 2015 U.S. Dist LEXIS 74349 (E.D. Tenn) ("The statute does not define 'lasciviousness' itself. As discussed by several courts, images of sexual activity involving minors deemed illegal because of its 'lascivious' nature is a far more subjective category of sexual activity than those categories which

7

can be more easily identified such as intercourse or masturbation"); Rivera, 546 F.3d 245 (2nd Cir. 2008) ("[The Dost factors] are not mandatory, formulaic, or exclusive").

In theory, jury instructions would serve to protect defendants by informing juries about what they may and may not consider in the weighing of these decisions, but even in theory this would only protect against conviction rather than prosecution, and when the courts which instruct them are themselves informed by such exceptionally far-reaching precedence as this, there truly can be no objective standard. Additionally, there is no protection for a defendant if a jury finds images to be child pornography based on arbitrary and extra-legal considerations, such as their own morals, or taste, or sense of personal disgust. A defendant has no hope that the courts will vindicate them when the jury has not. See: Salgado, 250 F.3d 438 (6th Cir. 2001) ("In assessing the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of witnesses, or substitute our judgement for that of the jury") quoting Wright, 16 F.3d 1429 (6th Cir. 1994).

In Free Speech Coalition, 535 U.S. 234, 257, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2001), the Supreme Court held that a portion of the federal child pornography statute was unconstitutional because "the determination whether speech is to be treated as child pornography turns on how the speech is presented, not on what is depicted." What must be depicted, according to the definition in 18 U.S.C. §2256, is not merely an image of a minor that is designed to elicit lust in a pedophile by showing even a covered and indistinguishable genitalia or pubic region. What must be depicted

is the product of the sexual abuse of a minor. What must be depicted is a _minor_ _engaging_ _in_ _Sexually_ _explicit_ _conduct_, which can include a lascivious exhibition of the anus, genitals, or pubic area of any person. See: 18 U.S.C. §2256(8) and §2256 (2)(B)(iii). Clearly, this does not include depictions which are morphed, modified, zoomed, brightened, cropped, freeze-framed, or angled, i.e. presented, with the intention to sexually excite the photographer or audience, if what is depicted is not sexually explicit conduct being engaged in by a minor, particularly if the depictions are not a recording of sexual abuse.

See: Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L. Ed. 2d 342 (1989)("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"); 2022 U.S. App LEXIS 17793 (D.C. Cir)(       , concurring)("Nor would anybody say that a girl... is engaged in sexually explicit conduct just because someone _else_ looks at her with lust"); and Free Speech Coal., 535 U.S. 234,      , 122 S.Ct. 1389, 152 L.Ed. 2d 403 (2001)("[Ferber]... reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the First Amendment's protection").

The Sixth Circuit has even warned about the constitutional implications of focusing too much on the subjective intent of the creator or viewer of a depiction.

See: Brown, 579 F.3d 672,      (6th Cir. 2009)("[I]f we frame the inquiry too broadly and place too much emphasis on the subjective intent of the photographer or viewer..., a seemingly innocuous photograph might be considered lascivious based solely upon the

9

subjective reaction of the person who is taking or viewing it. See, e.g. Amirault, 173 F.3d at 34 (recognizing that if the focus of the inquiry is on an individual's 'subjective reaction' to a photograph, "a sexual deviant's quirks could turn a Sears catalog into pornography") This could invoke the constitutional concerns associated with criminalizing protected expressive activity").

Yet, despite this, in judicial decisions, i.e. in (case) law, which have condemned people to prison, i.e. in fact, courts have decided that whether or not an image is child pornography may hinge on whether it is presented with the intention to arouse, rather than on whether it depicts a minor's sexually explicit conduct or is a product of their sexual abuse.

See: Courtade, 2017 U.S. Dist LEXIS 206570 (E.D. VA) AFF'd at 929 F.3d 186 (4th Cir. 2019) ("As the Ninth Circuit has held, 'where children are photographed, the sexuality of the depictions often is imposed upon them by the attitude of the viewer or photographer") quoting Arvin, 900 F.2d 1385 (9th Cir. 1990)"; Johnson, 639 F.3d 433,    (8th Cir. 2011) ("The fact that the young women in the videos were not acting in an obviously sexual manner... does not necessarily indicate that the videos themselves were not or were not intended to be sexual"; Barnes, 2021 U.S. App LEXIS 31838 (9th Cir. 2021) ("[T]he apparent motive of the photographer and intended response of the viewer are relevant") quoting Arvin, supra at 1389; Holmes, 814 F.3d 1246, 1252 (11th Cir. 2016) ("[D]epictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction"); Miller, 940 F.3d 371 (7th Cir. 2019) ("[T]he intent and motive of the photographer can be a relevant consideration in evaluating those images") quoting Russell,

662 F.3d 831 (7th Cir. 2011); Jauron, 832 F.3d 859 (8th Cir. 2016) "[W]e note that 'even images of children acting innocently can be considered lascivious if they are intended to be sexual(...") quoting Johnson, supra; and Price, 775 F.3d 828 (7th Cir. 2014)("[T]he intent and motive of the photographer can be a relevant consideration in evaluating whether an image depicts a lascivious display").

The "logic" here is that depictions of children acting innocently can somehow be depictions of minors engaged in sexually explicit conduct, if somebody else (who need not have any interaction with the children, whom the children need not ever be aware of, and whom need not even have created the depictions) recorded, modified or possessed them with lust in his mind. See also: Horn, 187 F.3d 781 (8th Cir. 1999). Horn's and Holmes' reasoning implies that one could even be guilty of producing child pornography for pausing the Ben Affleck film "Jersey Girl" or the Al Pacino film "Scent of a Woman," at the wrong moment, and puts the legality of the above-mentioned Sears catalog back into question under various circumstances.

The Brown court even went on to ignore their own warning, creating a "limited context" test for juries to use to determine if images are child pornography, by considering information outside of what is depicted in order to divine whether the creator intended the image to be sexually stimulating. See: Brown, supra and Carl, 2017 U.S. Dist. LEXIS 212643 (N.D. Ohio)("As Brown makes clear, '[T]he defendant's intent is only relevant to the extent that it informs the factfinder's determination of whether the nude photos [at issue] are lascivious") quoting Nichols, 2011 U.S. Dist. LEXIS 24017 (M.D. Tenn).

The movant argues that this does involve the very constitutional concerns that the Brown Court

11

was concerned about. In their dissent in Osborne
v Ohio, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed. 2d 98
(1990), Justices Brennan, Marshall, and Stevens
predicted some of the exact same overbreadth
concerns, in fact, regarding an Ohio state law with
very similar wording. With respect to the focal
point of a depiction (one of the oft-used Dost factors),
they wrote: "Not only is this factor dependent on the
perspective and ideosyncracies of the observer, it is
also unconnected to whether the material at issue
merits constitutional protection. Simple nudity, no
matter how prominent or 'graphic' is within the
bounds of the First Amendment. Michaelangelo's
'David' might be said to have a "graphic focus'
on the genitals, for it plainly portrays them in a
manner unavoidable to even a casual observer.
Similarly, a painting of a partially clad girl could
be said to 'involve a 'graphic focus' depending on
the picture's lighting and emphasis, as could the
depictions of nude children on the friezes that
adorn our courtroom. Even a photograph of a
child running naked on the beach or playing in
the bathtub might run afoul of the law, depending
on the focus of the camera angle." Id. at 138
      The justices seem prophetic in their
foresight of Horn, who freeze-framed images in a
video of children running and playing on a
topless beach, and of    who modified the
lighting and zoom of an image, and of Holmes
and   Johnson who were found guilty because
of the angle of their cameras. The analogy
between their understanding of the constitutional
issues with that Ohio law and §2252A becomes
even more prescient when you add the lack
of necessity for nudity or visibility of the
genitals, which was discussed above.
      They write also of examples of innocent,

Constitutionally-protected images which the Ohio law could, and which §2252A does sweep-in, should a jury decide they were created with impure thoughts in mind: "Pictures of topless bathers at a mediterranean beach, of teenagers in revealing dresses, and even of toddlers romping unclothed all might be prohibited." Id. at 131.

They go on to address the greatest problem that applies both to the Ohio law and to §2252A, and in doing so predict how the statute is used today to convict people of producing child pornography of children they have never met, let alone sexually abused: "[T]here is no requirement that the [government] show that the child was abused in the production of the materials or even that the child knew that a photograph was taken ... I do not see how a candid shot taken without the minor's knowledge can 'haunt[]' him or her in the years to come ... when there is no indication that the child is even aware of its existence." Id. at Footnote 18.

The record is rife, all across the country, of cases to which this wisdom applies, to say nothing of the presumptively higher number of actual cases of which case law is only a small fraction, such as those whose charged images did not depict sexual abuse but they didn't challenge the determination that the images were child pornography due to their own ignorance of the law, or who took a Rule 11 plea and so lost the right to challenge it. See: Holmes, 814 F.3d 1246 (11th Cir. 2016); Courtade, 2017, U.S. Dist LEXIS 206570 (E.D. VA); Arvin, 900 F.2d 1385 (9th Cir. 1990); Wiegand, 812 F.2d 1239 (9th Cir. 1987); Horn, 187 F.3d 781 (8th Cir. 1999); Johnson, 639 F.3d 433 (8th Cir. 2011); Stewart, 729 F.3d 517 (6th Cir. 2013); Andersen, 2010 CCA LEXIS 328 (A.C.C.A.)

The logical conclusion of the statute being interpreted in these ways by courts across the nation is that an overwhelming amount of depictions which are constitutionally protected could be found to be child pornography, and could be punished with severe prison sentences, if a jury decides capriciously that a pedophile might be aroused by it. Worse, whether a depiction is child pornography is not a static fact, but is dependent on who has it, where, in what context, and what the circumstances of its creation were, as any of these might "inform" a jury to decide that it is lascivious by reason of being sexually stimulating to the defendant.

The incredible overbreadth of this statute and its judicial augmentations can be illustrated with a small list of examples of constitutionally-protected depictions which are swept-in by the various courts of this nation. Should a person possess any of the following, a jury would be free to convict them, according to the statute and case law:

a.) A photograph of topless children, playing in and around an indoor swimming pool, some of whom have their legs spread. If shown to a jury without the context of the National Geographic article about Siberia with which it was published, it could be found to be child pornography. It's not too dissimilar to the images at issue in Horn.

b.) An image of several young children standing side by side, facing the camera, clad only in underbriefs. Each child is missing their left arm below

14

the elbow. If the image were removed
from the National Geographic article
about children born around the
Chernobyl disaster zone, or if it were
ripped out of the book it was
subsequently reprinted in, a jury would
be free to reason that the image was
created to appeal to a deviant's sexual
appetite, and could convict a defendant
for its possession. The logic of Andersen
and Knox, taken with the holdings in
Johnson and Hall show that this is
possible.

c.) An image or advertisement from a
newspaper, showing children playing in
a public waterpark, if any of the
children are shown in a way, or from
an angle, which makes their genitals
or pubic region visible to the camera,
despite being covered by bathing suits,
could be treated as child pornography
if a jury is not aware that the
depiction was originally from a
newspaper.

d.) Family photographs of children in the
bathtub, or toddlers romping unclothed,
if the jury believes the possessor to be
aroused by them, could be found to be
child pornography, particularly if the
images are not of the defendant's own
family, or if they are found in a
computer folder with other images
which might be sexually stimulating to
someone who is attracted to children.
Brown shows us how this is possible.

15

e.) Provocative or alluring images of fashion models, many of whom begin their careers well before age 18 (many of whom model bathing suits and lingerie), if the pubic region is in the frame, or if they are posed in too "unnatural" of a position, could be found to be child pornography depending on who possessed the publication they are contained in, and whether the jury believes that they are shown as sexual objects.

f.) Images of nudists or naturalists could be treated as child pornography if a jury arbitrarily finds the genitals to be the intended focus, or if the photographer has a prior child pornography conviction.

g.) Photographs taken in public places, of fully clothed teenagers or children, if their clothing and pose along with the angle of the camera do not hide their pubic region from the viewer, could be found to be child pornography if possessed by a suspected pedophile. Especially given the revealing nature of modern clothing styles, such as "leggins," fitness-causual garments, yoga pants, short-shorts, and mini-skirts, some of which are commonly worn by even very young children. Even tightly-worn jeans could be seen as accentuating the pubic area.

h.) Photographs or videos of high-school

cheerleaders, if one is doing a high-kick, or a video of one's child at gymnastics, if they are performing a backbend (or even if they aren't, as leotards tend to be rather revealing), could send a defendant to prison for the rest of his life, if the jury believes he took or possessed them because he found them to be erotic.

A practical example of this fact arises in the Instant Case: an item of probable cause in the FBI's affidavit for a warrant to search the Movant's phone was that he asked his daughter, newly a gymnast, for a picture of her in her leotard.

i.) A picture of a young female relative, cut to wallet-size, could send a defendant to prison if the resulting dimensions of the photograph leave the center of the child pictured in the center of the picture. As long as the jury believes the defendant intended the picture to be arousing, they would be free to reason that he modified the image to bring the genitals to the center of it in order to make the exhibition lascivous.

j.) Any number of scenes from such mainstream TV shows as Dance Moms, Toddlers in Tiaras, Honey Boo Boo, or images of Jean Benet Ramsay, or children's body-building competitions, or YouTube videos, if paused or screen-captured at the wrong moment, could "inform" a

jury that the image is child pornography because of the defendant's intent.

Considering the fluid, subjective requirements for finding an image to be child pornography, hosts of different types of images or videos which are constitutionally-protected, and do not result from the sexual abuse of children in any way, can be the basis for a conviction and a prison sentence if the depiction is shown to a jury without any context which proves the negative that there weren't any lustful thoughts or "sexual intent" behind its creation or possession.

As such, the Movant contends that the statute's reach goes far beyond the legislature's legitimate interest of protecting children from sexual abuse (to say nothing of whether such prohibition-styled laws are productive toward that goal, or not), and criminalizes a substantial amount of protected speech, thereby it is constitutionally overbroad on its face.

19

(wherein this Honorable Court allowed the use of legal child erotica possessed by the Movant to be used at trial as circumstantial evidence of knowledge or intent to possess child pornography).

One reason for this is the similarity of search terms used to locate the two types of depictions, respectively. The subject of each type of search are minors, and the desired results of each type of search are images which will sexually stimulate the searcher. How then does one distinguish, via his search, that he wants to find only legal results? A common-sense method would be to limit one's searches to publically-accessible websites which do not allow illegal content.

This method, however, is not foolproof. Several mainstream Internet platforms have, in recent years, struggled to elliminate child pornography from their servers. In 2018 or 2019 Twitter removed ALL forms of pornography from its site, in part to solve the problem of child pornography being notoriously difficult to distinguish and remove. In 2019, YouTube (owned by Google) purged thousands of videos from its servers and disabled comments on many videos of children due to an ongoing child pornography presence. In 2020, there was national debate regarding a controversial film published on Netflix perhaps being child pornography.

In addition to the danger of stumbling upon what is clearly child pornography, while seeking only legal child erotica, there is such overbreadth (as discussed above) and vaguery in determining what is child pornography, as refered to in 18 U.S.C. 2252A, that there is a veritable certainty that <u>something</u> one accesses while searching only for what is legal could be found to be child pornography by a jury who is especially disgusted by

anything which presents children for sexual gratification.

The greatest legal danger to a seeker of only legal child erotica arises from the fact that one is not free to navigate one's own behavior in light of the law: it is impossible for anyone who stumbles upon child pornography inadvertently, while hunting exclusively for legal child erotica, to choose NOT to receive or possess it. Firstly, because it is impossible to know if there is illegal content on a website until one accesses the site (unless it is advertised as such, or is common knowledge). More importantly because, as soon as one visits a website, his computer (or phone) automatically downloads everything on it, including the pictures or videos.

See: Pruitt, 638 F.3d 763, 767 (11th Cir. 2011) ("When a person uses the Internet, his browser automatically saves the content of the visited websites, including the images on those sites. This process, known as 'caching,' temporarily archives the files for the purpose of reducing page-loading time if the user revisits the sites. Quoting Kain, 589 F.3d 945, 948 (7th Cir. 2009)).

No matter whether a defendant intended to find legal child erotica, or child pornography, if there is child pornography on a site, even if the defendant could not have known, his computer downloads it automatically. Once this occurs, it is still not possible to choose not to possess it, because a normal computer-user cannot erase anything entirely from their device. Files which are "deleted" by the user are actually reassigned to "unallocated space" in the device's hard drive.

See: Schaff, 454 Fed. Appx. 880 (11th Cir. 2012) ("[w]hen a

user deletes a file from his computer, the file actually remains on the hard drive until it is over-written by other data. Such files are said to be in the computer's unallocated space."); Keefer II, 498 Fed. Appx. 797 (6th Cir. 2012)("[The agent] testified that... [w]hen a computer user deletes a file from his hard drive... [the file] is not wiped from the hard drive itself; it is just placed in unallocated file space'... Normal users could no longer access the file, but the file is still recoverable via forensic examination."); Flyer, 633 F.3d 911, (9th Cir. 2010)("Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software."); and Glenn, 935 F.3d 313, 322 (6th Cir. 2019)("A user generally cannot access files in the unallocated space of the hard drive without special software...").

Despite not having any access to the files in unallocated space, thereby not having the ability to choose not to possess them, computer users can still be charged, convicted, and subject to having their guidelines enhanced, for possessing or receiving files which are located in their unallocated space. In this way, this applies to the Movant directly as the two charges in the Instant Case are based entirely on images the FBI allegedly found in the unallocated space on Mr. Mercer-Kinser's phone during a forensic examination.

See: Hough, 2017 U.S. Dist. LEXIS 230466 (W.D. Kent.)("Those images were also found in the computer's unallocated space; no images of videos of child pornography were found in active files."); Blain, 2016 U.S. Dist. LEXIS 141960 (S.D. Ohio)("In fact, the government's forensic examiner found 9 images on the computer, all in the unallocated space of the hard disk..."); Conner, 2015

U.S. Dist LEXIS 94065 (S.D. Ohio) ("This process confined the child pornography files to 'unallocated' space on the computer's hard drive..."); Keefer II, 498 Fed. Appx. 797, (6th Cir. 2012)(wherein the 6th Circuit upheld an enhancement based on images found in the defendant's unallocated space); Willoughby, 2020 U.S. App. LEXIS 1946 (6th Cir. 2020) (wherein the 6th Circuit affirmed the conviction of a defendant who possessed images of child pornography, many of which were in unallocated space); Pirosko, 787 F.3d 385 (6th Cir. 2015)(Affirming an enhancement for images found in the unallocated space of a USB thumb drive). Note - Blain, supra, was affirmed by the 6th Circuit at 766 Fed. Appx. 327 (6th Cir. 2019).

See also: Bogle, 2009 U.S. Dist LEXIS 33318 (W.D. Penn) and Solon, 2013 U.S. Dist LEXIS 206109 (Dist. Wyom.).

In Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed 2d 222 (1972), the U.S. Supreme Court said: "Because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." While the Court was discussing the vagueness doctrine, not overbreadth, their assertion highlights the issue here: a person can be charged, convicted, and enhanced for conduct which their computer undertakes automatically while the person was pursuing only legal activities. In this, there is no way for man to "steer between lawful and unlawful conduct," it is impossible for him to "act accordingly" because it is not his actions he is on trial for, but his computer's.

There is no way to avoid this danger except by avoiding that constitutionally-protected form of lawful conduct altogether, because the

statute does not give any notice of what behavior is required by law if a person does inadvertantly receive or possess child pornography while seeking only legal child erotica. This raises concerns of unconstitutional vagueness, as well.

The only hints of clarity in this respect are the use of the word "Knowingly" in the statutes, which makes knowledge, and thereby intent, an element of the crimes which §2252A outline, and the existence of an affirmative defense ennumerated at §2252A(d). The movant avers that these do not rectify the issue of overbreadth (or vagueness), and will address both of them in the next section of this Brief.

Insofar as there is any doubt that legal child erotica is speech, which is protected by the Constitution's First Amendment, the courts have made it clear that pictures and videos are speech. See: ETW Corp v. Jireh Publ'g Inc, 332 F.3d 915 (6th Cir. 2003)("The protection of the First Amendment is not limited to spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures."); and Kaplan, 413 U.S. 115, 119-120, 93 S.Ct. 2680, 37 L.Ed. 2d 492 (1973)("As with pictures, films, paintings, drawings, and engravings, both oral utterances and the printed word have "First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution."). Not only is legal child erotica speech, it is speech which is protected by the First Amendment. In Ferber, the Supreme Court listed "simulation outside of the prohibition of the statute" as an alternative to showing children engaged in sexually explicit conduct

in films.
See: Ferber, 458 U.S. 747, 763, 102 S.Ct. 3348, 72
L. Ed. 2d 1113 (1982).

The Court in Free Speech Coal. equated
that with "virtual child pornography" in finding
the latter protected.
See: Free Speech Coal, 435 U.S. 234,      , 122 S.Ct.
1389, 152 L.Ed.2d 403 (2002).

The same logic applies to legal child
erotica in that it does not involve the sexual
abuse of children and thereby is a legal alternative
to child pornography, and is protected speech. In
coherence with this notion, the Court also held
the following:

"[Ferber] reaffirmed that where speech is neither
obscene nor the product of sexual abuse, it does not
fall outside the First Amendment's protection." Id.
at      .

Also, "[p]rotected speech does not become
unprotected merely because it resembles the latter;
the Constitution requires the reverse..." Id. at
See also: Texas v Johnson, 491 U.S. 397, 414, 109 S. Ct.
2533, 105 L.Ed.2d 342 (1989) ("If there is a bedrock
principle underlying the First Amendment, it is that
the government may not prohibit the expression of
an idea simply because society finds the idea
itself offensive or disagreeable."); and Hillie, 2022
U.S. App LEXIS 17793 (D.C. Cir.) (      , concuring)
("Nor would anybody say that a girl... is engaged
in sexually explicit conduct just because someone
ELSE looks at her with lust.")(Emphasis in original.)

In that child pornography is present even on
the mainstream Internet, that there is no way to
ensure that one will not inadvertantly access child
pornography while seeking only legal child erotica, that

there is no way to choose to not receive or possess child pornography if one stumbles it accidentally, that the statute gives no fair warning of what behavior is required by law if a person finds themselves in this situation, and that a person may be convicted and imprisoned thusly, the only way for an individual to remain certain of his liberty is by refraining from seeking legal child erotica altogether.

In that legal child erotica is speech which is protected by the First Amendment, this effectively chills protected free speech. Taken together with all the types of protected speech listed above which are impermissibly swept-in by the Statute and its myriad interpretations, this amounts to a substantial amount of protected speech which is swept-in, even in relation to the legitimate interest in protecting children from sexual abuse, and therefore §2252A is unconstitutionally overbroad on its face.

In the Instant Case, the Movant is charged for exactly the conduct described above. The two charges are for images which Mr. Mercer-Kinser never intended to receive or possess. He sought only legal child erotica and his conduct extended only to seeking legal child erotica, which is constitutionally-protected, and the law offered him no opportunity to navigate his behavior according to it, except by avoiding this constitutionally-protected form of expression altogether.

In this way, §2252A allows for the Movant to be charged, convicted, and imprisoned for only conduct which is protected by the First Amendment, and it does not allow for a way to remain on the right side of the law without

Sacrificing Mr. Mercer-Kinser's First Amendment rights. This amounts to an unconstitutional overbreadth in §2252A as it is currently being applied to Mr. Mercer-Kinser.

3. Both the affirmative defense in the statute, and the presence of the word "Knowingly," effectively fail to protect from prosecution or conviction for protected speech under §2252A.

  §2252A includes an affirmative defense regarding cases wherein a defendant is charged with child pornography depictions of real minors, at §2252(d). This affirmative defense does not, however, rectify the overbreadth of §2252A in that it does not serve to protect defendants from the unconstitutionally overbroad applications discussed above. This is so for multiple reasons.

  As mentioned above, a person can not Know what exists on a website before he accesses it (except if it is advertised or common Knowledge). Too, once a person inadvertantly accesses a webpage containing child pornography, there is no way for them to remove it from their computer without specialized software, and, even if they delete it they can be prosecuted for receiving and possessing the illegal conduct. E.g. The Movant has been detained for three years, awaiting trial for receiving and possessing only deleted images.

  The power of §2252A(d) to protect the innocent or prevent overbroad enforcement is diminutized to the point of non-existence upon closer examination. §2252A(d)(1), for example, elliminates protection if the website a defendant unintentionally found child pornography on contained more than 2 illegal images, or if it contained a single-second-long video clip since videos are counted as multiple images, or likewise if a seeker of only child erotica has accidentally

stumbled on a single image of child pornography subsequent to accidentally finding 2 other illegal depictions, ever, since he has owned his computer.

A person who seeks only what the first Amendment protects, but due to its proximity to illegal content finds that which is not protected, has no control over the number of illegal images he finds. In limiting the affirmative defense to 2 images, the legislature has created a legal Catch-22, wherein one is only protected if he ensures that his accidental action is limited in such a way which would be impossible unless it were not an accident. The only solution would be to sacrifice his First Amendment rights by refraining from such speech, thus §2252A(d)(2) prevents §2252(d) from remedying §2252A's unconstitutional overbreadth.

To demonstrate this effect as applied to the Movant, consider that all the images for which Mr. Mercer-Kinser is being charged were deleted from his phone. If §2252A(d)(1) did not limit its protection to 2 images, the affirmative defense would apply to Count Two in the Instant Case. As it is, due to no choice the Movant made, he is not protected by the affirmative defense, and so faces a second charge, and an additional decade of his liberty lost.

Even if, ad arguendo, there are less than 3 images at issue, §2252A(d) is still impotent to cure §2252A's overbreadth. §2252A(d)(2)(A) does not clarify what is meant by "[t]ook reasonable steps to destroy each such image...;" enough to give fair notice of what conduct

29

is required. This is clear because one may still be prosecuted and convicted for images which have been deleted. What then constitutes a "reasonable step" to destroy an image? Must one destroy their computer or smartphone? Or surrender it, perhaps permanently, to law enforcement in order to activate §2252A(d)(2)(B)? Given how intimately tied to our daily lives our computers and phones are in the modern age, that seems an awfully severe sacrifice one would need to make every time one stumbles upon something illegal, just to stay on the right side of the law because of something one found unintentionally. And for §2252A(d)(2)(B) to be the only legal option would render §2252A(d)(2)(A) void.

These two elements of the statute further exemplify the issue of vagueness mentioned earlier, as well: because §2252A(d)(1) is a precondition to §2252A(d)(2), destroy one's computer, nor even reporting it to the police and surrendering one's computer, are enough to protect someone from prosecution or conviction if they accident upon a page with 3 or more images, or one video, of child pornography on it. If that happens, the law provides no fair warning of what behavior it requires, no information at all, in fact.

As it turns out, however, all of these issues are made moot by the wording of §2252A(d). The affirmative defense is made entirely powerless to rectify any overbreadth, or to do anything else; it is made wholly impotent by the fact that it applies only to "Violating subsection (a)(5)" of §2252A, and not to subsection (a)(2). This is so because a person may be convicted under §2252A(a)(2) or §2252A(a)(5)(B) for exactly the same conduct. The Sixth Circuit, and

others, have held that neither the offense of Receipt, under §2252A(a)(2), nor Possession, under §2252A(a)(5)(B), require proof of any fact which the other does not, thus §2252A(a)(5)(B) is a "lesser-included offense" of §2252A(a)(2).

See Lemoine, 819 Fed. Appx. 358, 363 (6th Cir. 2020) ("To determine whether two offenses violate double jeopardy, we ask whether each offense requires proof of a fact that the other does not... 'A common short-hand for this is whether one is a lesser-included offense of the other.'")(Quoting Hutchinson, 448 Fed. Appx. 599, 602 (6th Cir. 2012), and ("[A]s a matter of plain meaning, one obviously cannot "receive" an item without then also "possessing" that item, even if only for a moment.' Id. at 695. Thus, the possession of child pornography was a lesser-included offense for receipt of child pornography.") Quoting Ehle, 640 F.3d 689, 698-699 (6th Cir. 2011).

See also: Salguero, 748 Fed. Appx. 109, 111 (9th Cir. 2018)("Possession of child pornography is a lesser-included offense of receipt of child pornography."); and Croghan, 973 F.3d 809 (8th Cir. 2020)("The convictions for receipt and possession of child pornography turn on essentially the same requirements and evidence...") Quoting Worthey, 716 F.3d 1107, 1113 (8th Cir. 2013).

Because §2252A(a)(2) and §2252A(a)(5)(B) can be charged and convicted for exactly the same conduct and rely on the same requirements and evidence, an affirmative defense which protects against one, especially if it's the "lesser" one, and not the other is absolutely powerless. Therefore, any unconstitutional overbreadth that the affirmative

defense could have the power to alleviate in
§2252A(a)(5)(B) would remain unmitigated in
§2252A(a)(2).

The affirmative defense does nothing to rectify
the unconstitutionality of §2252A, nor anything else.

The Supreme Court in Free Speech Coal. explains
another flaw in reliance on an affirmative defense
to relieve unconstitutional overbreadth.
See: Free Speech Coal., 535 U.S. 234, 255-256, 122
S. Ct. 1389, 152 L. Ed. 2d 403 (2001) ("The government
raises serious constitutional difficulties by seeking to
impose on the defendant the burden of proving his
speech is not unlawful. An affirmative defense
applies only after prosecution has begun, and the
speaker must himself prove, on pain of felony
conviction that his conduct falls within the affirmative
defense... If the evidentiary issue is a serious
problem for the government, as it asserts, it will be
at least as difficult for the innocent possessor.")

The same problem arises when trying to rely on
the scienter component to alleviate the overbreadth:
The defendant is placed in the nearly impossible
position of proving his speech was not unlawful, by
proving the negative that he did not intend to
receive or possess child pornography, but only child
erotica. This is exactly the burden placed on the
Movant in the Instant Case.
This is made even less plausible by the fact
that the "Knowingly" element of §2252A's offenses can
be met by circumstantial evidence alone, and when
taken with the fact that the circumstantial
evidence need not elliminate all reasonable innocent

theories, plausibility is all but extinguished. See: Kelley, 461 F.3d 817, 825 (6th Cir. 2006)(Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. The jury may draw any reasonable inferences from direct, as well as circumstantial proof.")

The logical conclusion of this is that a jury can convict someone who accidentally accesses child pornography while seeking only constitutionally-protected legal child erotica if the circumstantial evidence allow for the posibility that the defendant intended to find the illegal depictions. The only way then that the scienter component protects him is if the only theories which are reasonably possible are that his access of the illegal material was inadvertant. Or, put simply, unless he can remove the possibility of intentional access, the jury may convict.

Whether proving the negative, regarding his knowledge or intention, is possible at all is a question for philosophers. As applied to the Instant Case, and to all victims of the statute's overbreadth, what this means is that the scienter component doesn't protect anyone from the statute's unconstitutional overbreadth; all it does do is to place an impossibly difficult burden on the defendant to prove that he did not knowingly or intentionally access what he accessed, on pain of felony conviction and potential loss of his liberty.

A final, terminal dilemna with the scienter component as remedy for §2252A's overbreadth is evident in the Instant Case: if the jury are allowed to consider the Movant's possession of legal child

erotica as circumstantial evidence of knowledge or
intent of the possession and receipt of child
pornography, as this Honorable Court has ruled,
then the constitutionally-protected depictions, which
are all that Mr. Mercer-Kinser sought, may be used
to condemn him for the unprotected depictions he
may have accessed inadvertently. This does not
protect him from the statute unconstitutionally
sweeping-in and chilling the very same protected
speech; it has the opposite effect, turning
constitutionally-protected expression into a legal
liability, thus chilling it all the more.
See: Mercer-Kinser, 2021 U.S. Dist. LEXIS 149762
(E.D. Mich.).

     For these reasons, neither the affirmative defense,
nor the word "knowingly" in §2252A in any way
mitigate the unconstitutional overbreadth inherent in the
statutory language and the judicial interpretations thereof.

4. The government's legitimate interest in protecting children from sexual abuse is outweighed by the burden the statute, and its judicial interpretations and extensions, place on free speech, and is inapplicable to many forms of speech which it punishes and chills.

It is without question that the government may punish those who possess or receive child pornography, and that they have a legitimate interest in doing so: the protection of children from the sexual abuse which child pornography arises from. It is without question that child pornography does not enjoy constitutional protection. It is also well-established, however, that this does not mean that the courts or the legislature have a blank check to criminalize anything they want, just because it may sexually stimulate someone who is attracted to minors.

See: Williams, 533 U.S. 285, 289, 128 S.Ct. 1830, 170 L. Ed. 2d 650 (2008)("We have held that a statute which proscribes the distribution of all child pornography ... does not on its face violate the First Amendment... Moreover, we have held that the government may criminalize the possession of child pornography... The broad authority to proscribe child pornography is not, however, unlimited.")

One limitation the government is constrained by, in this respect, is the requirement that speech which is criminalized as child pornography must be the result of the sexual abuse of children. For the law to go beyond that, and silence speech as child pornography which does not arise from the sexual abuse of

children is for the government to abuse the authority entrusted to it by ignoring the limits which the Constitution created.
See: Free Speech Coal., 535 U.S. 234,   , 122 S.Ct. 1389, 152 L.Ed. 2d 403 (2002)("[Ferber]... reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the First Amendment's protection."); and Backpage.com, 939 F. Supp. 2d 805 (M.D. Tenn, 2013)("In the context of regulating child pornography, for instance, the Supreme Court has stated that restrictions on expressive materials must be "intrinsically related" to the sexual abuse of children' to avoid concerns of overbreadth.") Quoting Free Speech Coal., 535 U.S. at 250.

As demonstrated in the first two parts of this brief, 18 U.S.C. §2252A's wording, the definitions applicable to it in §2256, the myriad judicial interpretations of it, many of which extend the statute's sweep, and the lack of protection offered by the affirmative defense in §2252A(d), effectively sweep in a plethora of forms of expression which are wholly unconnected to the sexual abuse of children, and chill more still. This is a significant burden placed on speech, and it raises precisely the "concerns of overbreadth" about which the Supreme Court was concerned.

In testing for overbreadth, it must be shown of a law that its burden on speech is substantial even in relation to the statute's plainly legitimate sweep.
See: Williams, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed. 2d 650 (2008)("In order to maintain an

appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.")

In that the plainly legitimate sweep of 18 U.S.C. §2252A is the prohibition of depictions which exhibit the sexual abuse of children, the statute and its real-world applications (i.e. judicial interpretations) go beyond that, to criminalize expression that could not otherwise be criminalized. See: Williams, 553 U.S. 285, 299, 128 S.Ct. 1830, 170 L.Ed. 2d 650 (2008) ("The constitutional defect we found in the pandering provision at issue in Free Speech Coalition was that it went beyond pandering to prohibit possession of material that could not otherwise be proscribed.")

The Supreme Court has struck down a portion of the child pornography laws which extend the sweep beyond the protection of children from sexual abuse. See: Free Speech Coal., 535 U.S. 234, 250, 122 S.Ct. 1389, 152 L.Ed. 2d 403 (2002) ("In contrast to the speech in Ferber, speech that itself is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production.")

The same is true of the forms of speech discussed in Parts 1 & 2 of this Brief. These forms of speech are wholly outside the purview of the law's legitimate regulatory purpose. See: Backpage.com, LLC, 939 F. Supp. 2d 805 (M.D. Tenn 2013) ("The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.

Ed. 2d 403 (2002). ` A law is overbroad under the First Amendment if it "reaches a substantial number of impermissible applications relative to the law's plainly legitimate sweep." Deja Vu of Nashville v. Metro. Gov't. of Nashville & Davidson Cnty, 274 F.3d 377, 387 (6th Cir. 2001)(Citing New York v. Ferber, 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed. 2d 1113 (1982)). `Therefore, any laws imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down.' Id. at 387.")

Regarding the weighing of the burden placed on speech against the plainly legitimate sweep of the statute, the Supreme Court have spoken definitively insomuch as the hunt for legal child erotica is chilled, and that other forms of protected speech are made criminal by the statute and its application. See: Free Speech Coalition, 535 U.S. 234, 251, 122 S Ct. 1389, 152 L.Ed. 403 (2002)("Because Ferber relied on the distinction between actual and virtual child pornography' as supporting its holding, it provides no support for a statute that eliminates the distinction and makes the alternative mode criminal as well."), and ("The government may not - consistent with the federal Constitution's First Amendment - suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter; the Constitution requires the reverse, for the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." Id. at    .)

38

Therefore, 18 U.S.C. §2252A chills and punishes speech outside the purview of its plainly legitimate sweep, and the burden it places on free speech is substantial, even in relation to its plainly legitimate sweep, and as such it is unconstitutionally overbroad both, on its face, and as it is applied to the Movant.

39

5. The statute enables the punishment of the private thoughts of individuals by hingeing the legality of depictions on the thoughts of the viewer or creator, rather than exclusively on the content of the material at issue.

In Ferber, the Supreme Court upheld a prohibition on certain activities pertaining to depictions proscribed as child pornography because they are "intrinsically related" to the sexual abuse of children. In Free Speech Coalition, they held that the illegality of depictions labeled child pornography must turn on the content of the depictions. See: Free Speech Coal., 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L. Ed. 2d 403 (2002)("Ferber upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "intrinsically related" to the sexual abuse of children in two ways.") and Id. at 257 (Wherein the Court held a law overbroad in part because the legality of the depictions at issue would not "depend principally upon the content" of the depictions.)

In their zeal to protect children from the assumed danger of pedophilia, however, courts all over the country have deviated from these notions. As discussed in the first part of this Brief, a common consideration that courts look to in determining whether a depiction is illicit is not whether it depicts the sexual abuse of a minor, but whether the image seems intended to arouse someone with a sexual interest in children. See: Johnson, 639 F.3d 433 (8th Cir. 2011)("Thus even images of children acting innocently can be considered lascivious if they are intended to be sexual."); and Petroske, 928 F.3d 767 (8th Cir. 2019)("But the "fact that the young women in the video were not acting in an obviously sexual manner,

40

...does not necessarily indicate that the videos themselves were not or were not intended to be lascivious.") (quoting Johnson, supra); and Holmes, 814 F.3d 1246 (11th Cir. 2016)("The Eighth, Ninth, and Tenth Circuits have each confronted this same question. In considering whether an image constitutes a lascivious exhibition, those courts have looked to the intent of the producer or editor of an image"); and Courtade, 2017 U.S. Dist. LEXIS 206570 (E.D. VA), aff'd at 929 F.3d 186 (4th Cir. 2019) ("As the Ninth Circuit has held, where children are photographed, the sexuality of the depictions often is imposed upon them by the attitude of the viewer or photographer.")(quoting Arvin, 900 F.2d 1385,     (9th Cir. 1990); and Miller, 940 F.3d 371 (7th Cir. 2019)("[T]he intent and motive of the photographer can be a relevant consideration in evaluation those images.") (quoting Russell, 662 F.3d 831 (7th Cir. 2011); and Salmoran, v. AG, 909 F.3d 73, Footnote 10 (3rd Cir. 2018)("'Lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like minded pedophiles."...[T]he focus must be on the <u>intended</u> effect, rather [than] the <u>actual</u> effect on the viewer.' United States v. Larkin, 629 F.3d 177, 184 (3d Cir. 2010)(alteration added)(quoting United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987)).")(emphasis in original); and Moore, 215 F.3d 681, 687 (7th Cir. 2000)("While neither appear to depict sexual activity or sexuality, the poses of naked children that emphasize their exposed genitalia and buttocks seem designed to provoke a sexual response.")
    The central theme of the holdings is that the legality of depictions labeled as child pornography, and criminalized in 18 U.S.C. §2252A, does not necessarily turn on the content of the depictions, and whether that is the sexual abuse of minors. Instead, the determination

of legality can turn on whether the producer had lust in mind when the image was created. If the creator produced the image for the wrong reason, the logic seems to imply, it doesn't matter whether the image portrays the sexual abuse of minors, it doesn't matter if the child was nude or their genitals exposed, it doesn't matter if the conduct shown is sexual in any way; the impure thoughts transmute the image into child pornography. Since the sexuality can be imposed upon a depiction by thought alone, the only actual limiting factor to conviction under §2252A seems to be the assumed thoughts of the photographer at the image's creation.

While it is true that most (if not all) federal crimes require criminal intent for one to be found guilty, it is not typically the case that the actus reas of a crime is solely the thoughts of an individual. Much less if the individual whose thoughts define the crime (the producer of child pornography) is not the individual who is on trial (the defendant of a §2252A offense).

Insofar as possession of images which do not depict the sexual abuse of children can be found criminal depending principally on "the attitude of the viewer or photographer," it is apparent that the attitude or intent, i.e. the thoughts, constitute the crime. See: Balsys, 524 U.S. 666, 714, 118 S.Ct. 2218, 141 L.Ed. 2d 575 (1998) (Breyer, J. Dissenting) ("[T]he First Amendment protects against the prosecution of thought crime.")

Because the principal difference between a person who is sexually aroused by children, and anyone else, is entirely what that person thinks, it is intuitive to suggest that it is right to protect

42

children by punishing those who think of children sexually. Alas, the Supreme Court have spoken clearly on this concept both without, and with regard to child pornography laws. Despite the urgency in protecting children, the government does NOT have the authority to punish a person for their thoughts. Even if those thoughts are of sex, even if they refer to children, even if the thinker is filming or photographing children at the time.
See: Stanley v. Georgia, 394 U.S. 557, 566, 89 S.Ct. 1243, 22 L.Ed. 2d 542 (1969)("Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts."); and Free Speech Coal., 535 U.S. 234,   , 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)("Under the free speech guarantee of the federal Constitution's First Amendment, the government cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.")
    Thusly, whether individuals can be (and some are) prosecuted and convicted (and sentences are enhanced) under §2252A for images and videos turns not necessarily on the content of the depictions, but can be determined based on what the creator was thinking, and whether they had lustful thoughts in mind when the depiction was produced. This is obviously not regulation of content (child pornography) but of thought, and is not permitted by the Constitution, according to the Supreme Court. In this way, 18 U.S.C. §2252A is unconstitutionally overbroad on its face.